UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CENTRAL DIVISION

| | |
|---|---|
| BMG MUSIC, a New York general partnership; MAVERICK RECORDING COMPANY, a California joint venture; CAPITOL RECORDS, INC., a Delaware corporation; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; UMG RECORDINGS, INC., a Delaware corporation; and ARISTA RECORDS LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN DOE, <br><br> Defendant. | CIVIL ACTION No.: <br><br> **05-40055**FDS |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

## I.    INTRODUCTION

Plaintiffs, record companies who own the copyrights in the most popular sound recordings in the United States, seek leave of Court to serve limited, immediate discovery on a third party Internet Service Provider ("ISP") to determine the true identity of the Doe Defendant, who is being sued for direct copyright infringement. Without such discovery, Plaintiffs cannot

identify the Doe Defendant, and thus cannot pursue their lawsuit to protect their copyrighted works from infringement.[1]

As alleged in the complaint, the Doe Defendant, without authorization, used an online media distribution system (*e.g.*, a peer-to-peer or "P2P" system) to download Plaintiffs' copyrighted works, distribute copyrighted works to the public, and/or make copyrighted works available for distribution to others. See Declaration of Jonathan Whitehead ("Whitehead Decl."), ¶ 16 and Ex. 1. Although Plaintiffs do not know the true name of the Defendant,[2] Plaintiffs have identified him or her by a unique Internet Protocol ("IP") address assigned to the Defendant on the date and at the time of his or her infringing activity. Id. Additionally, Plaintiffs have gathered evidence of the infringing activity. Id. ¶¶ 16-17. Plaintiffs have made copies of several sound recordings the Defendant illegally distributed or made available for distribution, and have obtained copies of a more complete list of files that the Defendant has made available to the public for distribution. Id. and Ex. 1.

Plaintiffs have identified the ISP that provided Internet access to the Defendant by using a publicly available database to trace the IP address for him or her. Id. ¶¶ 12, 16. Here, the ISP is Assumption College ("AC"). Id. When given a Defendant's IP address and the date and time of infringement, an ISP quickly and easily can identify the name and address of the Doe Defendant (*i.e.,* the ISP's subscriber) because that information is contained in the ISP's

---

[1] Because Plaintiffs do not currently know the identity of the Defendant, Plaintiffs cannot confer with the Defendant prior to the filing of this Motion, as required by Local Rule 7.1.

[2] When using a P2P system (*e.g.*, KaZaA, eDonkey, iMesh, Grokster, or Gnutella), a Defendant typically uses a moniker, or user name, and not his or her true name. Whitehead Decl., ¶ 7. Plaintiffs have no ability to determine the Defendant's true name other than by seeking the information from the ISP. Id. ¶¶ 11, 16-17.

subscriber activity log files. <u>Id.</u> ¶ 14.[3] Plaintiffs' experience is that ISPs typically keep log files of subscriber activities for only limited periods of time – which can range from as short as a few days, to a few months – before erasing the data. <u>Id.</u> ¶ 22.

Plaintiffs now seek leave of Court to serve limited, immediate discovery on AC to identify the Defendant. Plaintiffs intend to serve a Rule 45 subpoena on AC seeking the Defendant's true name, address, telephone number, e-mail address, and Media Access Control ("MAC") addresses. Once Plaintiffs learn the Defendant's identifying information, Plaintiffs will contact him or her and attempt to resolve the dispute. If the dispute is not resolved and it is determined that it would be more appropriate to litigate the copyright infringement claims in another jurisdiction, Plaintiffs will dismiss the present lawsuit and re-file in another jurisdiction. Without the ability to obtain the Defendant's identifying information, however, Plaintiffs may never be able to pursue their lawsuit to protect their copyrighted works from repeated infringement. <u>Id.</u> ¶ 22. Thus, the need for the limited, immediate discovery sought in this Motion is critical.

## II.    BACKGROUND

The Internet and P2P networks have spawned an illegal trade in copyrighted works. By downloading P2P software, and logging onto a P2P network, an individual can upload (distribute) or download (copy), without authorization, countless copyrighted music and video files to or from any other Internet user worldwide. <u>Id.</u> ¶ 7. <u>See</u> <u>Universal City Studios,</u>

---

[3] ISPs own or are assigned certain blocks or ranges of IP addresses. A subscriber gains access to the Internet through an ISP after setting up an account with the ISP. An ISP then assigns a particular IP address in its block or range to the subscriber when that subscriber goes "online." After reviewing the subscriber activity logs (which contain the assigned IP addresses), an ISP can identify its subscribers by name. Whitehead Decl., ¶ 14.

Inc. v. Reimerdes, 111 F. Supp. 2d 294, 331 (S.D.N.Y.), aff'd sub nom., Universal City Studios,

Inc. v. Corley, 273 F.3d 429 (2d Cir. 2001) (describing a viral system, in which the number of

infringing copies made available multiplies rapidly as each user copying a file also becomes a

distributor of that file). Until enjoined, Napster was the most notorious online media distribution

system. See A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001).

Notwithstanding the Napster Court's decision, similar online media distribution systems

emerged that have attempted to capitalize on the growing illegal market that Napster fostered.

These include KaZaA, eDonkey, iMesh, Grokster, and Gnutella, among others. Whitehead

Decl., ¶ 6. Despite the continued availability of such systems, there is no dispute that the

uploading and downloading of copyrighted works without authorization is copyright

infringement. Napster, 239 F.3d at 1014-15; In re Aimster Copyright Litig., 334 F.3d 643 (7th

Cir. 2003), cert. denied, 124 S. Ct. 1069 (2004). Nonetheless, at any given moment, millions of

people illegally use online media distribution systems to upload or download copyrighted

material. Whitehead Decl., ¶ 6. More than 2.6 *billion* infringing music files are downloaded

monthly. L. Grossman, *It's All Free*, Time, May 5, 2003, at 60-69.

  The propagation of illegal digital copies over the Internet significantly harms

copyright owners, and has had a particularly devastating impact on the music industry.

Whitehead Decl., ¶ 9. Retail sales – the principal revenue source for most record companies –

declined 7% in 2000, 10% in 2001, and 11% in 2002. Id. ¶ 9. Evidence shows that the main

reason for this precipitous drop in revenues is that individuals are downloading music illegally

for free, rather than buying it. See In re Aimster Copyright Litig., 334 F.3d at 645.

  In an effort to stop the rampant copyright infringement over the Internet,

Plaintiffs previously utilized the subpoena process codified in 17 U.S.C. § 512(h) of the Digital

Millennium Copyright Act ("DMCA") to obtain the identities of infringers.  Whitehead Decl.,
¶ 14.  Since 1998, ISPs routinely have disclosed to Plaintiffs the true names of infringing users in
response to DMCA subpoenas.  Id. ¶ 15.  On December 19, 2003, however, the Court of Appeals
for the District of Columbia Circuit ruled that the DMCA subpoena provision could not be used
in the D.C. Circuit to obtain information from ISPs performing so-called "conduit" functions.
See Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc., 351 F.3d 1229 (D.C.
Cir. 2003) ("Verizon").  In Verizon, however, Verizon itself conceded that, as an alternative to
using the DMCA subpoena process, Plaintiffs could simply file "John Doe" lawsuits and issue
Rule 45 subpoenas to ISPs to obtain the true identities of infringing subscribers.  Whitehead
Decl., ¶ 15.  Accordingly, Plaintiffs are pursuing this alternative in the present case.

## III.    ARGUMENT

Courts routinely allow discovery to identify "Doe" defendants.  See Wakefield v.
Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given
possibility that identity could be ascertained through discovery); Valentin v. Dinkins, 121 F.3d
72, 75-76 (2d Cir. 1997) (vacating dismissal; pro se plaintiff should have been permitted to
conduct discovery to reveal identity of defendant); Dean v. Barber, 951 F.2d 1210, 1215 (11th
Cir. 1992) (error to deny plaintiff's motion to join John Doe defendant where identity of John
Doe could have been determined through discovery); Munz v. Parr, 758 F.2d 1254, 1257 (8th
Cir. 1985) (error to dismiss claim merely because defendant was unnamed; "Rather than
dismissing the claim, the court should have ordered disclosure of the Officer Doe's identity");
Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged
defendants [are not] known prior to the filing of a complaint . . . the plaintiff should be given an
opportunity through discovery to identify the unknown defendants"); Maclin v. Paulson, 627

F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery"); <u>United Parcel Serv. of Am., Inc. v. John Does One Through Ten</u>, No. Civ. A. 1-03-CV-1639, 2003 WL 21715365, at *1 (N.D. Ga. June 13, 2003) (authorizing expedited discovery to determine the identity of defendants); <u>see also</u> <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 389 n. 2 (1971) (noting, without discussion, the use of unnamed defendants).

Indeed, in similar copyright infringement cases brought by the Plaintiffs, and/or other record companies, against Doe defendants infringing copyrights over P2P networks, many courts, including this Court, have granted plaintiffs' motions for leave to take expedited discovery. <u>See</u>, <u>e.g.</u>, Order, <u>Virgin Records America, Inc. v. John Doe</u>, Civil Action No. 04-30223-KPN (D. Mass. November 29, 2004); Order, <u>Arista Records, Inc. v. John Doe</u>, Cause No. 4:04CV0036AS (N.D. Ind. May 24, 2004); Order, <u>Arista Records, Inc. v. Does 1-9</u>, Case No. H:04-1677 (S.D. Tex. May 20, 2004); Order, <u>UMG Recordings, Inc. v. Does 1-2</u>, No. CV04-0960 (RSL) (W.D. Wash. May 14, 2004); Order, <u>Elektra Entertainment Group v. Does 1-5</u>, Civil Action No. 3:CV-04-940 (M.D. Pa. May 11, 2004); Order, <u>Loud Records, LLC v. Does 1-5</u>, No. CV-04-0134-RHW (E.D. Wash. May 10, 2004); Order, <u>Interscope Records v. Does 1-37</u>, Case No. A-04-CA-237 LY (W.D. Tex. May 6, 2004); Order, <u>BMG Music v. Does 1-9</u>, Case No. 5:04-cv-58 (W.D. Mich. May 6, 2004); Order, <u>Warner Bros. Records Inc. v. Does 1-35</u>, No. 2:04-cv-00084-WOB (E.D. Ky. May 4, 2004); Order, <u>Sony Music Entertainment Inc. v. Does 1-2</u>, Civil No. 04-1758 (DSD/JSM) (D. Minn. May 4, 2004); Order, <u>London-Sire Records Inc. v. John Doe</u>, Civil Action No. 7:04CV00208 (W.D. Va. May 3, 2004); Order, <u>Virgin Records Am., Inc. v. Does 103</u>, Civil Action No. 3-04-cv-701 (JCH) (D. Conn. April 29, 2004); Order,

Maverick Recording Co. v. Does 1-4, Case No. C-04-1135 MMC (N.D. Cal. April 28, 2004);

Order, Maverick Recording Co. v. Does 1-2, Case No. 04-CV-149 ML (D.R.I. April 28, 2004);

Order, Sony Music Entertainment Inc. v. Does 1-200, No. 4:-04-CV-339 CEJ (E.D. Mo. April

22, 2004); Order, Loud Records, LLC v. Does 1-4, Case No. 04-C-289 (E.D. Wis. April 22,

2004); Order, Virgin Records Am., Inc. v. John Doe, Civil No. PJM 04-964 (D. Md. April 19,

2004); Order, Fonovisa, Inc. v. Does 1-67, Civ. Action No. 04-WM-548 (PAC) (D. Colo. April

7, 2004); Order, Warner Bros. Records Inc. v. Does 1-9, Case 04-71058 (E.D. Mich. April 5,

2004); Order, Atlantic Recording Corp. v. Does 1-13, Case No. 1:04CV316 (E.D. Va. April 2,

2004); Order, London-Sire Records, Inc. v. Does 1-4, Case No. CV 04-1962 ABC (AJWx) (C.D.

Cal. April 2, 2004); Order, Arista Records, Inc. v. Does 1-143, Case No. 4:04CV93 (E.D. Tex.

Mar. 30, 2004); Order, Interscope Records v. Does 1-7, No. 3-04-0240 (M.D. Tenn. Mar. 29,

2004); Order, Interscope Records. v. Does 1-4, No. CV-04-131 TUC-JM (D. Ariz. Mar. 25,

2004); Order, Interscope Records v. Does 1-5, Cause No. 1:04-CV-0542-DFH-TAB (S.D. Ind.

Mar. 25, 2004); Memorandum Opinion and Order, UMG Recordings, Inc. v. Does 1-199, Civil

Action No. 04-093 (CKK) (D.D.C. Mar. 10, 2004); Order, BMG Music v. Does 1-203, Civil

Action No. 04-650 (E.D. Pa. March 5, 2004); Order, Virgin Records Am., Inc. v. Does 1-44, No.

1:04-CV-438-CC (N.D. Ga. Mar. 3, 2004); Order, Elektra Entm't Group, Inc. v. Does 1-7, Civ.

Act. No. 3:04-CV-00607-GEB-SRC (D.N.J. Feb. 17, 2004); Order, Capitol Records, Inc. v. Does

1-250, No. 04 CV 472 (LAK) (S.D.N.Y. Jan. 26, 2004) (true and correct copies of these thirty

Orders are attached hereto as Exhibit A). This Court should follow the well-reasoned decisions

of these courts.

Courts allow parties to conduct expedited discovery in advance of a Rule 26(f)

conference where the party establishes "good cause" for such discovery. See Semitool, Inc. v.

Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); Qwest Comm. Int'l, Inc. v.
WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003); Entertainment Tech. Corp. v.
Walt Disney Imagineering, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. October 2,
2003) (applying a reasonableness standard; finding that, absent extraordinary circumstances, "a
district court should decide a motion for expedited discovery on the entirety of the record to date
and the reasonableness of the request in light of all of the surrounding circumstances")
(quotations omitted); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14
(D. Ariz. 2001) (applying a good cause standard). Plaintiffs easily have met this standard.

First, good cause exists where, as here, the complaint alleges claims of
infringement. See Semitool, 208 F.R.D. at 276; Qwest Comm., 213 F.R.D. at 419 ("The good
cause standard may be satisfied . . . where the moving party has asserted claims of infringement
and unfair competition."); Benham Jewelry Corp. v. Aron Basha Corp., No. 97 CIV 3841, 1997
WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997). This is not surprising since such claims
necessarily involve irreparable harm to the plaintiff. 4 Melville B. Nimmer & David Nimmer,
Nimmer On Copyright § 14.06[A], at 14-103 (2003); see also Health Ins. Ass'n of Am. v.
Novelli, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed to suffer
irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is
invaded.") (quotations and citations omitted); see also Taylor Corp. v. Four Seasons Greetings,
LLC, 315 F.3d 1034, 1042 (8th Cir. 2003); ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d
60, 66 (2d Cir. 1996).

Second, good cause exists here because there is very real danger the ISP will not
long preserve the information that Plaintiffs seek. As discussed above, ISPs typically retain user
activity logs containing the information sought for only a limited period of time before erasing

the data. Whitehead Decl., ¶ 22. If that information is erased, Plaintiffs will have *no* ability to identify the Defendant, and thus will be unable to pursue their lawsuit to protect their copyrighted works. Id. Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for expedited discovery exists. See Qwest Comm., 213 F.R.D. at 419; Pod-Ners, LLC v. Northern Feed & Bean, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing Plaintiff expedited discovery to inspect "beans" in defendant's possession because the beans might no longer be available for inspection if discovery proceeded in the normal course).

        Third, good cause exists because the narrowly tailored discovery requests do not exceed the minimum information required to advance this lawsuit and will not prejudice Defendants. See Semitool, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). Plaintiffs seek immediate discovery to identify the Defendant; information that may be erased very soon. Plaintiffs (who continue to be harmed by Defendant's copyright infringement, Whitehead Decl., ¶ 9), cannot wait until after the Rule 26(f) conference (ordinarily a prerequisite before propounding discovery) because there is no known Defendant with whom to confer (and thus, no conference is possible). There is no prejudice to the Defendant because Plaintiffs merely seek information to identify the Defendant and to serve him or her, and Plaintiffs agree to use the information disclosed pursuant to their subpoenas only for the purpose of protecting their rights under the copyright laws.

        Fourth, courts regularly grant expedited discovery where such discovery will "substantially contribute to moving th[e] case forward." Semitool, 208 F.R.D. at 277. Here, the present lawsuit cannot proceed without the limited, immediate discovery Plaintiffs seek because

there is no other information Plaintiffs can obtain about Defendant without discovery from the ISP. As shown by the Declaration of Jonathan Whitehead, Plaintiffs already have developed a substantial case on the merits against the Defendant. Plaintiffs' complaint alleges a *prima facie* claim for direct copyright infringement. Plaintiffs have alleged that they own and have registered the copyrights in the works at issue, and that Defendant copied or distributed those copyrighted works without Plaintiffs' authorization. See Complaint. These allegations state a claim of copyright infringement. Nimmer On Copyright § 31.01, at 31-3 to 31-7; Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). In addition, Plaintiffs have copies of a sample of the sound recordings the Defendant illegally distributed or made available for distribution, and have made a copy of a more complete list of files he or she has made available for distribution to the public. See Complaint Ex. A; Whitehead Decl., ¶¶ 16-17 and Ex. 1. This more complete list shows hundreds of files, many of them sound recordings (MP3 files) that are owned by, or exclusively licensed to, Plaintiffs. See Whitehead Decl., ¶ 17 and Ex. 1. Plaintiffs believe that virtually all of the sound recordings have been downloaded, distributed and/or offered for distribution to the public without permission or consent of the respective copyright holders. Id. ¶ 17. Absent limited, immediate discovery, Plaintiffs will be unable to obtain redress for any of this infringement.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the Motion and enter an Order

substantially in the form of the attached proposed Order.

Respectfully submitted,

DATED: _____3/24/05_____    By: _____

Colin J. Zick (BBO No. 556538)
Gabriel M. Helmer (BBO No. 652640)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
Phone: (617) 832-1000
Fax:    (617) 832-7000

ATTORNEYS FOR PLAINTIFFS

11

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.